UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                      CRIM. CASE NO. 10-20338

v.                                     PAUL D. BORMAN
                                     UNITED STATES DISTRICT JUDGE

D-3 FRANKLIN BAQUEDANO

              Defendant.
_____/

**ORDER**
**FINDING EXCLUDABLE DELAY UNDER THE SPEEDY TRIAL ACT**
**AS TO DEFENDANT BAQUEDANO FOR THE PERIOD FROM**
**FEBRUARY 23, 2011 TO AUGUST 23, 2011**

This case involves six Defendants indicted on a death-eligible offense 18 U.S.C. § 1958 –

Conspiracy to Travel in Interstate Commerce with Intent to Commit Murder.  Death-eligible

cases are different!  Significantly, such a case requires appointment of a "learned counsel"[1] to

assist a local counsel in representing each defendant. All Defendants were born abroad; four in

Mexico, two in Honduras.

After appointment of counsel and arraignment on the indictment on a death-eligible

charge, an all-important first step for defense counsel is to prepare a mitigation package to

submit to the local United States Attorney who has the first call on whether to seek the death

penalty, and if yes, whether to seek the death penalty against all or some of the defendants.

The mitigation package will usually include, *inter alia*, interviews with friends, family,

---

[1] Learned counsel is an individual experienced and qualified in death penalty case
representation.

1

and acquaintances of the defendant, school and work records, etc., the best evidence supportive of defendant's request for a DOJ declination of the death penalty. The mitigation package, after submission to the local U.S. Attorney, is then forwarded to the Department of Justice in Washington, D.C. for decision.

Preparation of an effective mitigation packages requires significant time and effort, not just by the defendant's lawyers, but by mitigation specialists added to the defense team.

In the instant case, at a Court status conference on February 23, 2011, five of the six Defendants, after having been explained their rights under the Speedy Trial Act 18 U.S.C. § 3161 *et. seq*., agreed to waive their right to a Speedy Trial, and set the next status conference on August 23, 2011. The Court found the waivers to clearly be in the interest of justice – specifically to permit the creation of a mitigation package for the Defendant facing a potential death penalty, and then to permit the mitigation process to proceed first locally, and then at the DOJ, with the goal of a DOJ declination of the death penalty.

Four of the five waiving Defendants, natives of Mexico, allege that because of the drug gang violence there, they cannot carry out the mitigation investigation. Indeed, counsel for the Mexican Defendants have filed motions to preclude the death penalty/stay the proceedings, alleging an inability to develop mitigation evidence from the "war zone" areas of Mexico where the relevant individuals reside. The fifth Defendant, also a Honduran, has waived Speedy Trial rights to permit the full mitigation procedure to play out.

Defendant Baquedano wants to partake in the DOJ mitigation process, but nevertheless declines to waive his speedy trial rights on the record. At the status conference on February 23, 2011, Baquedano's learned counsel stated:

2

> I intend to submit an entire mitigation package to the Government.
> . . . submit my mitigation package by April 7th . . . . that gives them
> [the Government] three weeks to read it locally. . . .  I'm in trial all
> through April, . . . meet with them in early May, certainly. Rough
> TR. 34.
> . . . .
> If they want to meet with them in Washington . . .
> Absolutely I'm going to meet with them.  TR 35.
> <u>The Court</u>: And Washington takes a couple of months to do that. . .
> <u>Learned Counsel</u>: At the very least. . . . P. 36 They usually take
> about 90 days. . . . P.37

Nevertheless, despite Counsel's adamant desire to participate in the complete mitigation process,

Counsel stated that after conferring with his client in open Court, that Defendant Baquedano

would not waive his right to speedy trial.

Counsel later said:

> And if the Court imposes that as a waiver, then I object.  P. 40.

Then learned counsel concluded: "So, whether it is or is not a waiver, is up to the Court."  P. 40.

Thereafter, learned counsel stated "I don't think DOJ accepts piecemeal submissions. . . .

it's going to get put into a file until everybody else's packet hits Washington."  P. 41. Learned

counsel then stated that Defendant Baquedano is not willing to waive speedy trial. P. 41, but then

in counterpoint stated that "I don't know if he's ready to go to trial within a couple of weeks." P.

41.

Finally, learned counsel stated:

> We're not waiving speedy trial, at this time although, as I said this
> is purely a matter of law.  If the Court determines the interest of
> justice requires speedy trial is tolled or that this is a complex case
> and speedy trial must be tolled, that is a legal conclusion.
>          There will be no voluntary waiver for Mr. Baquedano right
> now.  P. 42.

Thereafter, in a colloquy with the Court, learned counsel acknowledged that the ultimate

3

decision in Washington regarding the death penalty, which he wanted to receive prior to proceeding to trial, would be in the middle of June "at the very earliest."  P. 43.

The Court gave the parties an opportunity to brief the issue of whether the factors in this death penalty eligible case create a waiver under the Speedy Trial Act.

The Government filed a Motion for Excludable Delay Finding Under the Speedy Trial Act.  Defendant Baquedano did not file a response.

The Court concludes as a matter of law to grant Defendant's Motion for Excludable Delay, finding that this case meets the factors contained in the statute, 18 U.S.C. § 3161, *et. seq.*

The Court concludes that the time between February 23, 2011 and the next status conference currently scheduled for August 23, 2011, is excludable time under the Speedy Trial Act for the reasons stated *infra*.

The Court begins its conclusion with a bit of legal reality.  The Sixth Amendment to the Constitution states that in all criminal prosecutions, the accused is entitled to "the Assistance of Counsel for his defense."  The Supreme Court has guaranteed a defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984).  The Court concludes that for defense counsel to short circuit the DOJ mitigation process that could result in a death penalty declination would amount to ineffective assistance of counsel.

The Speedy Trial Act, 18 U.S.C. § 3161(c)(1) *et seq.,* requires that in a multi-defendant case a trial shall commence within 70 (seventy) days after the last defendant is arraigned on the indictment.  The Act provides for exclusions from the 70-day deadline, for delays/continuances, where the court sets forth in writing its reasons for finding "that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a

4

speedy trial." § 3161 (7)(A).

The Court finds, among the factors to be considered in § 3161 (7)(B), that the failure to grant a continuance would result in a miscarriage of justice because Defendant Baquedano would not have an opportunity to present his mitigation argument to avoid a death penalty prosecution. Indeed, learned counsel for Defendant Baquedano conceded this on multiple occasions at the status conference, but then danced the two-step by stating that his client refused to waive his rights to a Speedy Trial. The Court agrees with defense counsel's insistence on protecting his client's right to the complete mitigation process. This evidences effective assistance by counsel, and evidences "Learned counsel." To proceed to trial unprepared and without presenting a full mitigation package and receiving a full mitigation review would be ineffective assistance of counsel. The Court rejects the second step; Defendant's refusal to waive the right to Speedy Trial, in the face of his counsel's insistence that he wants to partake fully in the mitigation process.

Accordingly, the Court concludes that the ends of justice are served by granting a continuance until August 23, 2011, and that this continuance outweighs the best interests of the public and the Defendant in a Speedy Trial.

The Court finds that the failure to grant such a continuance would result in a miscarriage of justice.

The Court also finds that this case is unusual – death is different – and complex – six Defendants, all from outside the United States, none of whom speak English and will require

translations of tapes/transcripts of tapes.[2] The Court finds, that as to <u>all</u> six Defendants, it is unreasonable to expect a complete mitigation process, and adequate preparation for the trial, within the 70-day time limit.

The United States Supreme Court in *Zedner v. United States*, 547 U.S. 489, 507 (2006) recited § 3161 (h)(8)(A)'s requirement that when a district court grants an ends-of-justice continuance it must set forth its reasons for finding that the ends of justice are served and they outweigh other interests. The Court has done so here. A sufficient record has been set forth to permit the Court to find that the time period from February 23, 2011 to the next status conference on August 23, 2011 is excluded under the Speedy Trial Act as time because the ends of justice are clearly served by granting such a continuance.

SO ORDERED.


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  May 4, 2011

---

[2] The Court also notes that the other five defendants raise a novel question of law (whether inability to obtain mitigation evidence in Mexico supports the four Mexican Defendants' motion to enjoin the death penalty). This does not factor into the Court's decision as to Defendant Baquedano.

6

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
May 4, 2011.


                                        S/Denise Goodine_____
                                        Case Manager