UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

Plaintiff,

CASE NO. 10-20338

v.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

FRANKLIN GONZALO SIERRA-RODRIGUEZ and
ENRIQUE AMAYA and
FRANKLIN BAQUEDANO and
JESUS DANIEL MEDINA-MERAZ and
RAFAEL MARAVILLAS

Defendants.
_____/

OPINION AND ORDER DENYING
(1) DEFENDANT MEDINA-MERAZ'S MOTION OPPOSING
EMPANELING OF ANONYMOUS JURY (Dkt. 309)
(2) DEFENDANT BAQUEDANO'S MOTION OPPOSING
EMPANELING OF ANONYMOUS JURY (Dkt. 310)

This matter is before the Court on Motions by Defendants Medina-Meraz (Dkt. 309) and Baquedano opposing the empaneling of an Anonymous Jury (Dkt. 310). Defendant Sierra-Rodriguez joins in both motions (Dkt. Nos 311, 312) as do Defendants Enrique Amaya (Dkt. Nos 318, 319) and Rafael Maravillas (Dkt Nos 315, 316). For the following reasons, the Court DENIES Defendants' Motions. On the other hand, the Court, in the exercise of its discretion, and in the interest of justice, will empanel a semi-anonymous jury wherein counsel for each Defendant will know the names of the jurors on the venire, but that information cannot be shared

1

with their clients, or anyone else.

## I. INTRODUCTION

All five Defendants are charged in a superseding indictment with: Count 1: violation of 18 U.S.C. § 1958 - Conspiracy to Travel in Interstate Commerce with Intent to Commit Murder; Count 2: 18 U.S.C. §§ 924(c); 924(j); 2; Use of Firearm in Furtherance of Crime of Violence or Drug Trafficking Offense Causing Death based on the murder of Joaquin Lucero-Carillo in Littleton, Colorado, and aiding and abetting in this offense; Count 3: Three of the five defendants are also charged with a violation of 21 U.S.C. §§ 846, 841(a)(1) & 841(b)(1)(A)(ii)(II) – Conspiracy to Possess with Intent to Distribute 5 or more Kilograms of Cocaine: Defendants Amaya, Medina-Meraz, and Maravillas.[1]

The Court held a hearing on March 19, 2012, at which it raised the issue of empaneling an anonymous jury, and invited briefing on this issue. The Court has received Defendants' briefs in opposition to empaneling an anonymous jury, and the Government brief in support of a semi-anonymous jury, as was recently utilized in this courthouse at trials involving potential life sentences, before Judges Marianne O. Battani and Victoria Roberts. In the semi-anonymous scenario, Defendants' counsel are aware of the jurors names to assist them in jury selection, but cannot share the names of the jurors with their clients or anyone else.

## II. ANALYSIS

"The decision to empanel an anonymous jury 'is within the sound discretion of the trial court.'" *United States v. Lawson*, 535 F.3d 434, 439 (6th Cir. 2008) (quoting *United States v.*

---

[1] Co-Defendant Villalon-Espinoza, the sixth defendant listed in the superseding indictment, is no longer proceeding to trial.

2

*Talley*, 164 F.3d 989, 1001 (6th Cir. 1999)). *See also United States v. Warman*, 578 F.3d 320, 343-344 (6th Cir. 2009). The Jury Selection Plan for the Eastern District of Michigan, 12/18/00, states in pertinent part in (o)(5): "Any district judge may order the names to be kept confidential in any case when the interests of justice so require." The facts alleged in this case, as set forth in the superseding indictment, are relevant to the Court's decision.

The murder charged in this case:

a. was not a random killing, *i.e.*, not an accidental shootout over a busted drug deal;
b. was carried out by a conspiracy involving a total of 6 people from Michigan and Colorado; and
c. involved:
    1. The procuring of a shooter, who was transported from Michigan to Colorado;
    2. The procuring of a Colorado co-defendant to "set up" the victim;
    3. The procuring of a car and decoy female transporters; and
    4. The creating of an alibi for the Michigan organizer.

Although Defendant Sierra-Rodriguez allegedly told law enforcement officers that he was associated with an organization – MS 13 – the Government has stipulated to not introduce any evidence of that organization in its case-in-chief. Nevertheless, that evidence could conceivably come out in rebuttal and the association with the MS 13 is a fact that the Court cannot ignore in analyzing the importance of an anonymous jury.

The Court notes that the two recent trials in this courthouse, that involved potential life imprisonment sentences, utilized semi-anonymous jurors; *United States v. Cook*, No. 10-20667 (E.D.Mich. 2010) (Battani, J.) and *United States v. Stone*, No. 10-20123, 2012 WL 113479 (E.D.Mich. Jan. 13, 2012) (Roberts, J.). *Cook* resulted in a jury acquittal of the sole defendant charged with murder, and the potential life imprisonment charges against the *Stone* defendants were dismissed by Judge Roberts, and thus did not even get to the jury.

3

The instant Defendants face potential life sentences if convicted, a factor that is appropriate for this Court to consider in deciding whether or not to impanel an anonymous jury. See *Warman*, 578 F.3d at 344. Defendants argue that the severity of the punishments Defendants face is of no import because the jurors are not aware of the sentences that may be imposed. This argument is misplaced. The *Warman* court was not concerned with the jurors' knowledge of the potential punishment, but rather the defendants' knowledge: "[T]he Defendants faced lengthy sentences upon conviction, increasing the likelihood that they would resort to extreme measures to influence the outcome of their trials." 578 F.3d at 344.

In *United States v. Lawson*, the Sixth Circuit stated:

> The anonymity of a jury should be preserved in situations including, but not necessarily limited to, the following: (1) when the case involves very dangerous defendants who were participants in large-scale organized crime, and who participated in mob-style killings and had previously attempted to interfere with the judicial process; (2) when the defendants had a history of attempted jury tampering and serious criminal records; or (3) when there have been allegations of dangerous and unscrupulous conduct by the defendant, coupled with extensive pretrial publicity.

*Lawson*, 535 F.3d at 439 (citing *United States v. Talley*, 164 F.3d at 1001).

The *Lawson* court determined that the district court's decision to empanel an anonymous jury was not an abuse of discretion because the first and third of the three situations described above were present in the case. *Id.* at 440. The evidence demonstrated that the defendants were dangerous individuals whose association with a gang made them part of a large-scale criminal enterprise. *Id.* The evidence also showed that a defendant had participated in a mob-style killing by participating in the murder of a man who owed a drug debt. In the instant case, the indictment alleges that Defendants took part in an intricately organized murder, i.e., they are alleged to be

dangerous individuals.

The *Lawson* court conceded that "publicity may not have been particularly extensive," but noted that there were two prominent newspaper articles about the case. *Id.* at 440. Defendants argue that publicity is not a concern in the instant case. However, the government brief cites two articles relating to the case, one from the Denver News and one from the local Oakland Press. There is a possibility of additional local publicity as the case proceeds to a likely six-week trial.

Defendants contend that empaneling an anonymous jury contradicts the presumption of innocence. This Court disagrees. The Sixth Circuit in *Lawson* pointed out:

> Contrary to *Lawson's* argument, there is no constitutional right to a public jury. The Sixth Amendment provides Defendants with a right to a public <u>trial</u> by an impartial jury, but it does not guarantee a right to a public <u>jury</u>.

*Lawson*, 535 F.3d at 441 (emphasis in original).

The Sixth Circuit, in *Lawson* dealt with Defendants' argument by requiring that the Court minimize any prejudicial effect an anonymous jury might have by providing the jurors with a neutral, non-prejudicial reason for their anonymity. *See, e.g. Lawson*, 535 F.3d at 440. The "typical" explanation given to jurors is that their identity is anonymous to protect them from media attention. *Id.* citing with approval *Talley*, 164 F.3d at 1002 n.7:

> This case is one where there is likely to be a good bit . . . of media interest, because it is important to all of the parties that there not be any media contact with jurors . . . until this case is over, we are using your juror numbers during this process and at all times do not give me your names, do not give the parties your names, but always when you are addressing the court refer to your juror number. We do this for your benefit to make sure . . . that you are not bothered or approached by any media about this case or any aspect of it.

The Sixth Circuit has also upheld other explanations. *See, e.g. United States v. Deitz*, 577 F.3d 672, 686 (6th Cir. 2009) (concluding that is was not error for the district judge to tell jurors anonymity was required by the unusually large number of prospective jurors); *Warman*, 578 F.3d at 344 (same). In *Lawson*, the Court kept the jurors names confidential from defense counsel as well; in this case the jurors names will be provided to defense counsel. 535 F.3d at 440.

Additionally, as suggested by decisions of the Sixth Circuit, the Court will "ensure that the defendant(s) retain [their] right to an unbiased jury by conducting a voir dire designed to uncover bias . . . .". *Talley*, 164 F.3d at 18; *Lawson*, 535 F.3d at 440. These protections, in addition to the Court's giving a neutral, non-prejudicial explanation for anonymity, generously address Defendants' objections based on fairness.

### III.  CONCLUSION

Empaneling a semi-anonymous jury is appropriate in the instant case. There are allegations of an organized killing by the five Defendants. In this previously death penalty eligible case, the Defendants face potential life sentences. The Court will provide the jury with a neutral, non-prejudicial explanation for requiring anonymity, and invites the parties to submit a proposed stipulated instruction. If no stipulation can be reached, a defense-stipulated proposal and a government proposal should be submitted, and the Court will craft an appropriate instruction. The Court has granted the parties request for an extensive jury questionnaire. The

Court also will conduct appropriate follow up voir dire. Accordingly, the Court DENIES

Defendants' Motions.

    IT IS SO ORDERED.

DATED: 4-10-12

                                            PAUL D. BORMAN
                                            UNITED STATES DISTRICT JUDGE